*B. T. Castellow, solicitor-general, R. R. Arnold,* contra.

---

### 7159.   DAVIS *v.* THE STATE.

"To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused."

Penal Code, § 1010. Under this rule, the evidence in this case was not sufficient to authorize the conviction.

DECIDED APRIL 21, 1916.

Indictment for burglary; from Jefferson superior court—Judge Hardeman. December 6, 1915.

R. G. Price, for plaintiff in error.

R. Lee Moore, solicitor-general, contra.

WADE, J. An express office was burglarized, and promptly thereafter a four-quart package of whisky, addressed to W. R. Sinquefield, and another package, billed as liquor, addressed to F. G. Grant, and a suit of clothes, addressed to Andrew Grant, were missed. Sinquefield testified, that he ordered by express, in December, 1914, two bottles of whisky and two of wine, but when he received the package from the express company, just before Christmas, one bottle of whisky and one bottle of wine were missing; but he was unable to identify the bottles, or even to say what was their color, except that he thought the two bottles he received were dark glass bottles. Andrew Grant testified, that he ordered, during the same month of December, a suit of clothes, consisting of a coat and a pair of pants; that it was a brown suit, and that he had a scrap of the goods to identify the clothes he ordered. This scrap was exhibited by the witness. He testified that he never received the suit, though notified to call at the express office therefor; that it had disappeared when he inquired for it, and the agent was unable to find it; that it was after the express office had been broken into that he went there to get the clothes, the value of which was $13. Scott testified, that in December, 1914, the defendant came to his house one afternoon and said that he was on his way to Macon, and had just come from Savannah, and invited the witness to take a drink of whisky, pulling out about a half quart of whisky and about a half quart of wine, in two quart-bottles; that the defendant obtained from him an empty half-pint bottle and filled it up, half with wine and half with whisky, and left with him the two quart bottles, which were identified by him and introduced in evidence; that in addition to the wine and whisky the defendant had a pair of overalls and a brown suit of clothes, and said he was going to Macon to have the suit of clothes (which he had purchased in Savannah) altered to fit him, as it was too large. This witness further testified that the suit the defendant had was a brown suit, and that he had examined the scrap of cloth

produced by the witness Andrew Grant, and the suit was "about that color," and "corresponded with this scrap of cloth all right, as the same clothes." Melton testified that he was a deputy sheriff and investigated the burglary at time it was committed, but did not see the defendant, though the latter had been in Louisville, where the office was located "some of the time;" that he was looking for the defendant, but did not see him after the burglary, and did not see him until he was arrested by one Mays, about two weeks thereafter; that the defendant then made a statement to him, freely and voluntarily, without any hope of reward or fear of punishment, according to which he admitted that he was at his sister's house, not far from where the crime was committed, on the day of its commission, and that after the burglary was committed on Sunday night he remained at his sister's house and slept there all' day Monday until 3:30 o'clock in the afternoon, and then walked down the railroad-track to the neighboring town of Wadley, and there purchased a ticket, and went to Macon. The defendant denied his guilt and asserted that he bought the clothes from a man in Savannah, and said that he left his sister's house on Saturday evening·and went to Wadley, where he caught a train for Savannah.

The foregoing is in substance the entire testimony delivered at the trial, and from a careful examination it will be observed. that there is no evidence whatever which positively identifies the suit of clothes in the possession of the defendant shortly after the commission of the crime as the particular suit ordered by Grant and missed from the express office. In fact there is no testimony to show that the suit shipped by the merchant from whom Grant ordered the suit was actually a brown suit, though it appears that Grant had ordered a suit of that color, which it was agreed should be like a brown sample in the possession of Grant. So far as the record discloses, the suit received by the express company was never compared, before it was stolen from the express office, with the sample from which Grant ordered. One witness for the State testified that the sample which Grant presented at the trial and identified as the sample from which he ordered was "about" the same color of brown as the brown suit which this witness saw in the possession of the defendant soon after the burglary, and he testified that "the suit corresponded with this sample of this scrap

of cloth all right, as the same clothes." But the same might possibly have been said as to any number of other brown suits; and, as already suggested, there was absolutely no evidence that the suit received by the express company for Grant was in fact of the color ordered by him, or was even similar in color to the suit seen in the possession of the defendant. So far as revealed by the record, notwithstanding Grant ordered a brown suit, the suit actually shipped to him and received for him by the express company at Louisville may have been of any other color, or, like Joseph's coat, of many colors. The fact that the brown suit seen in the possession of the defendant was too large for him is a circumstance tending to negative his explanation that he had purchased that suit for his own use; but it does not appear whether the suit was greatly too large for him, or that it was not equally too large for Grant, to fit whom, the State contended, the suit had been shipped by the makers or vendors. The loss from the package of liquor ordered by Sinquefield of one quart of whisky and one of wine, and the fact that the defendant, soon after the burglary, had in his possession a quart-bottle half filled with wine, and another bottle of the same size half filled with whisky, can not do more than excite some slight degree of suspicion; for the evidence fails to disclose the kind or quality of the whisky or wine in the possession of the defendant, or even whether the bottles were of the same color or general appearance as the two remaining bottles, not abstracted from the package, which were finally delivered to Sinquefield by the express company.

There is no testimony showing the presence of the accused at the scene of the crime at the time of its commission or later, though, according to his proved admission, he was in Louisville at his sister's house on the day the crime was committed, and spent the next day in her house until 3:30 o'clock in the afternoon, and then walked to Wadley, where he purchased a ticket and boarded a train for some other point. His apparently secreting himself in his sister's house on the day following the commission of the crime may be a suspicious circumstance, as is also the fact that he walked on the railroad-track from Louisville to Wadley, instead of traveling that distance by train; but, on the other hand, he may not have been in hiding, but may have been merely unwell, and may not have had the necessary funds to pay for his transportation

from Louisville to Wadley, or he may have preferred to save the required fare and to walk that distance instead.

Summing up the entire evidence, it may be said, that while it is sufficient to create a strong suspicion as to the guilt of the accused, it by no means comes up to the rule that circumstantial evidence must exclude every other reasonable hypothesis than that of the guilt of the accused, in order to support a conviction of crime. "In a case of burglary, where the guilt of the accused depends upon the possession of an article alleged to have been contained in the house burglarized, it is essential that the identity of the article found in his possession with the article which is alleged to have been stolen shall be established beyond a reasonable doubt." *Rayfield* v. *State,* 5 *Ga. App.* 816 (63 S. E. 920).

We think, therefore, that, in the absence of more specific testimony identifying the missing goods as the same articles found in the possession of the accused shortly after the burglary was committed, the learned trial judge erred in overruling the motion for a new trial, based on the general grounds only.

*Judgment reversed.*